AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
01/15/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
01/15/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _____JD_____ DEPUTY

United States of America

v.

MICHAEL CODY HENDERSHOT,

Defendant(s)

Case No.   8:21-mj-00017-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 1, 2021 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 922(g)(1) | Felon in Possession of Ammunition |

This criminal complaint is based on these facts:

   *Please see attached affidavit.*

☒ Continued on the attached sheet.

*Ryan McDuffy*
Complainant's signature

Ryan McDuffy, TFO ATF
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:     January 15, 2021

*Karen E. Scott*
Judge's signature

City and state:  Santa Ana, California

Hon. KAREN E. SCOTT,
U.S. Magistrate Judge
Printed name and title

B. Marrett (714) 338-3505

**A F F I D A V I T**

I, Ryan McDuffy, being duly sworn, hereby declare and state as follows:

## I. INTRODUCTION

1. I am a Detective with the Brea Police Department ("BPD") and also a federally deputized Task Force Officer ("TFO") presently working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As a TFO with the ATF, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. I am assigned to the ATF Orange County Violent Crime Task Force ("OCVCTF"). The OCVCTF is responsible for among other things, investigating violations of federal law involving criminal street gangs, possession of firearms by prohibited persons, possession of stolen firearms, possession of machineguns, the illegal distribution of firearms and narcotics, and burglaries and violent crime to include robberies. Prior to this assignment with the ATF, I was a BPD Police Officer and have been so employed for approximately three years.

3. I have specialized training and experience in investigations of narcotics trafficking and criminal street gangs. During my tenure as a Police Officer, as well as an ATF TFO, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to robberies. Since joining the OCVCTF in 2018, I have

1

specialized in investigations of robberies, firearms violations, drug trafficking, and gang activity. I have participated in the execution of numerous federal and state arrest and search warrants during my career.

## II. PURPOSE OF AFFIDAVIT

4.  This affidavit is made in support of a criminal complaint and arrest warrant for Michael Cody HENDERSHOT ("HENDERSHOT") for a violation of 18 U.S.C. § 922(g)(1) (Felon in Possession of Ammunition).

5.  The facts set forth in this affidavit are based upon information obtained from other law enforcement personnel, my personal knowledge, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. STATEMENT OF PROBABLE CAUSE

6.  Based on my review of a January 1, 2021 report prepared by BPD Officer S. Wulff, as well a discussion of the case with Officer Wulff, I have learned the following facts:

   **A.  Traffic Stop and Arrest of HENDERSHOT**

7.  On January 1, 2021, Officer Wulff was assigned to uniform patrol in the City of Brea. At the time of the incident Officer Wulff was driving a marked black and white BPD police vehicle. At approximately 3:44 p.m., Officer Wulff was

2

patrolling the Days Inn & Suites motel located at 333 East Imperial Highway, Fullerton, California when he observed a 2004 Toyota Camry bearing California license plate #8TNY836 exiting the parking lot with tinted front windows, a violation of California Vehicle Code ("CVC") section 26708.  The vehicle made a left turn onto Imperial Highway and traveled eastbound.  The vehicle then stopped and entered the 7-11 store located at 1108 Imperial Highway, Brea, California.  Officer Wulff parked his patrol vehicle across from the 7-11 and contacted Officer Luera for assistance.

      8.    While Officer Wulff was parked at the 7-11, he conducted a records check for the Toyota Camry.  The records check revealed that the registered owner was HENDERSHOT and that HENDERSHOT had a pending firearms case out of Orange County for felony weapons charges (Case # 20HF0894).  Officer Wulff informed Officer Luera of the information he learned from the records check.

      9.    The Toyota Camry then exited the 7-11 parking lot and began to travel eastbound on Imperial Highway.  Officer Luera activated his overhead lights and conducted a traffic stop at 410 West Imperial Highway for the tinted windows CVC violation.  Officer Luera asked HENDERSHOT for his driver's license, registration, and vehicle insurance.  As Officer Luera asked for this information, Officer Luera observed that HENDERSHOT's fingers and hands were shaking and he could tell HENDERSHOT was nervous.  HENDERSHOT was able to produce his driver's license, but had difficulty locating his insurance.  At one point,

Officer Luera suggested that HENDERSHOT check his glove box for the insurance, but HENDERSHOT was reluctant to do so, which raised Officer Luera's suspicion.  In particular, based on Officer Luera's knowledge of HENDERSHOT's pending felony weapons case and Officer Luera's training and experience that individuals often conceal weapons in vehicle compartments, Officer Luera believed that HENDERSHOT might be concealing a firearm in his glove box.

10.   While HENDERSHOT continued to locate his insurance, Officer Luera took HENDERSHOT's driver's license and went back to his police vehicle to confirm HENDERSHOT's identity.  Officer Luera confirmed HENDERSHOT's identity, confirmed that HENDERSHOT had a pending felony weapons case, and also learned that HENDERSHOT also had additional criminal history involving narcotics violations.

11.   Based on HENDERSHOT's nervous movements, HENDERSHOT's reluctance to open his glove box, HENDERSHOT's pending felony weapons case, and Officer Luera's training and experience, for officer safety, Officer Luera removed HENDERSHOT from the Toyota Camry and conducted a pat-down search.

12.   During the pat-down, Officer Luera felt with his open palm along HENDERSHOT's front left short's pocket an object with a bulbous end that Officer Luera immediately recognized based on his training and experience as a pipe used for ingesting narcotics such as methamphetamine.  Having identified the object as narcotics paraphernalia, Officer Luera reached into HENDERSHOT's pocket and removed a methamphetamine pipe wrapped

4

in toilet paper.  HENDERSHOT was then placed into handcuffs and Officer Luera completed a search of his person.

13. After Officer Luera searched HENDERSHOT's person, Officer Wulff asked HENDERSHOT if there was anything illegal in the vehicle.  HENDERSHOT stated that there was a pink gun in the center console and referred to it as a "ghost gun" (i.e., a firearm that did not have a serial number).

14. BPD Officers, including myself, then searched the vehicle.  Inside the center console, I located a loaded firearm. After locating the firearm, I removed the magazine and determined that the magazine had two .40 caliber rounds of ammunition loaded in it.

15. Additionally, inside of the vehicle on the back floorboard, Officer Wulff located a red tool bag.  Inside of the red bag were two 9mm magazines (capable of holding ten rounds each), a speed re-loader, and a milled lower handgun receiver (with no serial number).

16. Additionally, on the floor behind the driver's seat Officer Wulff located a black backpack.  Inside the backpack, Officer Wulff located a wheeler rifle tool, a mallet, a screwdriver, a rail cutter slide with an incomplete 1911 lower receiver attached, Dremel attachments, an upper receiver for a 1911 pistol, thirty-nine rounds of .223 caliber, one round of .9mm caliber, and one round of .380 caliber.  Next to the black backpack on the floorboard, Officer Wulff also located an incomplete milled lower receiver.  Finally, in the trunk of the

vehicle, Officer Wulff located a router, a Dremel tool, and a drill press.[1]

17. Following the search of the vehicle, Officer Wulff placed HENDERSHOT into the rear right seat of his police car and transported HENDERSHOT to the BPD Jail.

**B.   Interview of HENDERSHOT**

18. At the BPD Jail, I conducted a follow-up interview with HENDERSHOT. Before questioning HENDERSHOT, I read to him his Miranda rights verbatim from my department issued Miranda card. HENDERSHOT stated he understood his rights. I then began questioning HENDERSHOT regarding the incident.

19. HENDERSHOT stated he has been building and manufacturing firearms since he was a teenager. HENDERHSOT stated the firearm found inside the vehicle belonged to his girlfriend (Marlana Hendershot) but that he built it for her.

20. HENDERSHOT stated that he also makes firearms and sells them to others, and stated he makes approximately $1,500 per month from building and selling the firearms.

21. HENDERSHOT then explained that he currently lives in La Habra with his girlfriend (Marlana Hendershot, identified by Michael HENDERSHOT and identity confirmed via police database) and three kids. HENDERSHOT stated that due to not having any privacy, he and his girlfriend often rent rooms so that they can have time alone. HENDERSHOT stated that they were currently staying at the Days Inn located at 333 Imperial Highway,

---

[1] Based on my training and experience, I know that items such as Dremel attachments, lower receivers, and rail cutter slides are often used when manufacturing and building firearms.

Fullerton, California in room #335.  It should be noted that at the time of HENDERSHOT's arrest, he had a room key for the Days Inn.

22.  During the interview, I asked HENDERSHOT if he would permit me to view the contents of his cell phone.  HENDERSHOT consented to me reviewing several photographs contained on the phone.  I captured these photographs using my department issued cell phone.  The photographs shown to me by HENDERSHOT depict various firearms that HENDERSHOT claimed to have manufactured.

**C.  Searches of HENDERSHOT's Residences**

23.  On January 1, 2021, I obtained a search warrant signed by the Honorable Fred Slaughter, Orange County Superior Court Judge, for HENDERSHOT's hotel room at 333 West Imperial Highway #335, Fullerton, California, and HENDERSHOT's residence in La Habra.

24.  At approximately 10:30 p.m., BPD law enforcement personnel Sergeant Haddad, Detective D'huart, Officer Harris, Officer Mendez, and I executed the search warrant at 333 West Imperial Highway.  I detained Marlana Hendershot who was located inside the hotel room and was the sole occupant at the time of the warrant.  Inside the hotel room, Det. D'huart located a safe containing three rounds of 9mm Winchester ammunition.  Located next to the rounds inside the safe was the registration paperwork for HENDERSHOT's vehicle.

25.  Following the search of the hotel room, Sergeant Haddad, Detective D'huart, Detective Ojeda, Officer Harris, Officer Mendez, and I executed the search warrant at

HENDERSHOT's residence in La Habra.  During the search, law enforcement personnel located the following items:

    a.    Gun parts (barrel, gun spring, and backing);

    b.    Seven rounds of .45 caliber ammunition;

    c.    Twenty-five rounds of 12 gauge ammunition;

    d.    A Polymer80 gun kit;

    e.    Gun kit accessories; and

    f.    Eleven rounds of assorted handgun ammunition.

26.  I booked the above items at BPD evidence.

**D.**    **HENDERSHOT's Criminal History**

27.  Based on my review of law enforcement records documenting HENDERSHOT's prior criminal convictions, I have learned that HENDERSHOT was convicted of the following felony offenses on or about the dates specified below:

    a.    On January 18, 2006, for possession of a stolen vehicle, in violation of California Penal Code § 496D(a), in Orange County Superior Court, Case No. 06CF0105, for which he was sentenced to 3 years' probation and 180 days in jail;

    b.    On April 30, 2007, for insufficient funds, in violation of California Penal Code § 476A(a), in Orange County Superior Court, Case No. 07WF0234, for which he was sentenced to 16 months in prison;

    c.    On May 04, 2010, for possession of a stolen vehicle, in violation of California Penal Code § 496D(a) and possession of controlled substance in Orange County Superior Court, Case No. 10CF1049, for which he was sentenced to 16 months in prison;

d. On June 10, 2011, for felon in possession of firearm, in violation of California Penal Code § 12021(a)(1), in Orange County Superior Court, Case No. 11CF0941, for which he was sentenced to 3 year in prison;

e. On September 19, 2013, for felon in possession of a firearm, in violation of California Penal Code § 29805, and transportation of a controlled substance, in violation of California Health and Safety Code § 11379(a), in Orange County Superior Court, Case No. 12CF3711, for which he was sentenced to 4 years in prison;

f. On June 21, 2016, for felon in possession of a firearm, in violation of California Penal Code § 29805, possession of controlled substance while armed, in violation of California Health and Safety Code 11370.1(a), and sell or possess access card, in violation of California Penal Code § 484E(a), in the Orange County Superior Court, Case No. 15HF1340, for which he was sentenced to 6 years in prison.

**E.** **Interstate Nexus**

28. On January 15, 2021, I contacted ATF SA Jeff Davis, who is a firearms nexus expert. SA Davis informed me that based on his knowledge of the manufacturers of the various ammunition, none of the ammunition seized from HENDERSHOT's vehicle, hotel room, or residence were manufactured in the State of California and therefore must have travelled in interstate or foreign commerce to reach California.

### F. No Firearms License

29. On January 11, 2021, ATF SA R. Stearman queried the ATF Federal Licensing System and determined that HENDERSHOT does not possess, nor has he ever possessed, a license to sell or manufacture firearms.

### IV. CONCLUSION

30. For the reasons described above, there is probable cause to believe that HENDERSHOT has committed a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of ammunition).

/s/
Ryan J. McDuffy
Task Force Officer, ATF
Detective, BPD

Attested to by the applicant
in accordance with the
requirements of Fed. R. Crim.
P. 4.1 by telephone on this
15th day of January, 2021.

*Karen E. Scott*

HONORABLE KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

10